UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THE CONFEDERATED TRIBES AND BANDS OF THE YAKAMA NATION, a sovereign federally recognized Native Nation,<br><br>     Plaintiff,<br><br>  v.<br><br>CITY OF TOPPENISH, a municipality of the State of Washington; YAKIMA COUNTY, a political subdivision of the State of Washington,<br><br>     Defendants. | NO. 1:18-CV-3190-TOR<br><br>ORDER DENYING PRELIMINARY AND PERMANENT INJUNCTION |

BEFORE THE COURT is Plaintiff's Motion for Preliminary Injunction. ECF No. 16. This matter was heard with oral argument on February 15, 2019. The Court has reviewed the record and files therein, and is fully informed. For the reasons discussed below, Plaintiff's Motion for Preliminary Injunction is **DENIED**.

## BACKGROUND

On October 3, 2018, Plaintiff the Confederated Tribes and Bands of the Yakama Nation filed a Complaint against Defendants City of Toppenish and Yakima County. ECF No. 1. Plaintiff alleges a violation of the Treaty of 1855 arising from "Defendants' *ultra vires* exercise of criminal jurisdiction over enrolled Yakama members for alleged crimes occurring within the exterior boundaries of the Yakama Reservation." *Id.* at 2, ¶ 1.1. Because "Defendants' actions violated, and continue to violate, the rights reserved by the Yakama Nation in the Treaty of 1855," Plaintiff seeks declaratory and injunctive relief. *Id.* at 4, ¶¶ 1.8-1.9.

On December 12, 2018, Plaintiff filed the instant motion for a preliminary injunction. ECF No. 16. Defendants jointly filed a response to Plaintiff's motion on December 26, 2018. ECF No. 20.

## FACTS

The following facts are drawn from Plaintiff's Complaint and are essentially undisputed as relevant and material to resolution of the instant motion. As identified in the Complaint, there are two categories of facts in this case—facts that are largely historic and facts relating to the arrest of Leanne Gunn, a Yakama member, by City of Toppenish Police Officers. The facts relating to the arrest are fairly straightforward. On September 26, 2018, Toppenish Police Officers were

alerted that a "bait car," deployed by the Toppenish Police Department to combat auto theft, had been moved from its original location and was being driven within the City of Toppenish. ECF No. 1 at 6, ¶ 5.1. Toppenish Police tracked the bait car to 111 Branch Road, Toppenish, Washington, and requested law enforcement assistance at that location. *Id*. at ¶ 5.2. Yakama Nation Police officers responded to assist with the alleged vehicle theft. *Id*. at ¶ 5.5.

Once at the property, Toppenish Police detained the passenger in the bait car, Ms. Gunn, who identified herself as a Yakama member. *Id*. at ¶¶ 5.3-5.4. According to Plaintiff, Toppenish Police expressed their intent to charge Ms. Gunn under state law despite the protest of Yakama Nation Police Officers who took exception to Toppenish Police's claim of jurisdiction over a Yakama member. *Id*. at ¶ 5.5. Toppenish Police allegedly responded that they were exercising their jurisdiction over Ms. Gunn consistent with the decision of Division Three of the Washington Court of Appeals in *State v. Zack*, 2 Wash. App. 2d 667 (2018), *review denied*, 191 Wash. 2d 1011 (2018). *Id*. at ¶ 5.6.

Toppenish Police then contacted the owner of the real property, Vera Hernandez, who also identified herself as a Yakama member. *Id*. at ¶ 5.7. Toppenish Police requested Ms. Hernandez's consent to search her residence and the garage located on the property to look for the suspected driver of the stolen vehicle. *Id*. at ¶ 5.8. Ms. Hernandez consented to the search of both her residence

and the garage.  *Id*.  Though the suspected driver of the stolen vehicle was not found during the search, another vehicle was found in a nearby field that had been reported stolen in June of 2018.  *Id*. at ¶ 5.10.

After the search concluded, Toppenish Police Officer Kyle Cameron asked Yakama Nation Police Officers if they would obtain a search warrant for the premises.  *Id*. at ¶ 5.11.  The Yakama Nation Police Officers declined the request, citing insufficient evidence to find probable cause of a crime.  *Id*. at ¶ 5.12. Officer Cameron responded that Toppenish Police would obtain a state search warrant for the property.  *Id*. at ¶¶ 5.13-5.15.  Officer Cameron prepared a telephonic affidavit application for the search warrant, obtained a warrant from a Yakima County Superior Court Judge, and Toppenish Police Officers executed the search warrant on Ms. Hernandez' property.  *Id*. at ¶¶ 5.16-5.18.

According to Plaintiff, the facts described above are significant when viewed in the context of the following historical facts.  Under the Treaty of 1855, the Yakama Nation reserved all rights not expressly granted to the United States, including its inherent sovereign rights and jurisdiction over its enrolled members and its lands both within and beyond the exterior boundaries of the Yakama Reservation.  *Id*. at 5, ¶ 3.1.  Jurisdiction over the Yakama Reservation, as with all Indian Country, rests with federal and Yakama authorities "except where Congress in the exercise of its plenary and exclusive power over Indian affairs has expressly

provided that State laws shall apply." *Id*. at 9, ¶ 5.21; *Washington v. Confed. Bands and Tribes of the Yakima Indian Nation*, 439 U.S. 463, 470-71 (1979).

In 1953, concerned with "the absence of adequate tribal institutions for law enforcement" on "certain Indian reservations," Congress enacted Public Law 280 (Pub. L. No. 83-280, 67 Stat. 588 (1953)), which required some states and authorized others to assume criminal and civil jurisdiction in Indian Country within a state's borders. *Id*. at 10, ¶ 5.23 (quoting *Bryan v. Itasca Cty., Minn.*, 426 U.S. 373, 379 (1976)); *see* Pub. L. 83-280, 67 Stat. 588, 588-89 (1953). In 1957, Washington enacted a law establishing state jurisdiction over any Indian reservation for any tribe that requested the State's assumption of jurisdiction. ECF No. 1 at 10, ¶ 5.26; *Confed. Bands*, 439 U.S. at 474.

In 1963, Washington passed legislation allowing the State to assume civil and criminal jurisdiction pursuant to Public Law 280 over "Indians and Indian territory, reservations, country, and lands within this state," with certain limited exceptions. ECF No. 1 at 11, ¶ 5.27; *see* RCW 37.12.010. Specifically, Washington did not assume jurisdiction over lands held in trust by the United States or held by a tribe in restricted fee status, unless the tribe consented, except in the following eight areas: (1) compulsory school attendance; (2) public assistance; (3) domestic relations; (4) mental illness; (5) juvenile delinquency; (6) adoption proceedings; (7) dependent children; and (8) operations of motor vehicles on

public roads.  ECF No. 1 at ¶¶ 5.27-5.28; *see* RCW 37.12.010.  The Yakama Nation did not consent to State jurisdiction over its trust or restricted fee lands.  ECF No. 1 at ¶ 5.29.

In 1968, Congress amended Public Law 280 and repealed the option for states to assume jurisdiction over Indian Country without tribal consent, making tribal consent a prerequisite for any state assuming jurisdiction over Indian Country.  *Id*. at 12, ¶ 5.34; 25 U.S.C. § 1322(a).  For Washington and other states that had already assumed jurisdiction, Congress authorized the United States to "accept a retrocession by any State of all or any measure of the criminal or civil jurisdiction, or both, acquired by such State pursuant to the provisions of [Public Law 280] as it was in effect prior to [the 1968 amendments]."  ECF No. 1 at ¶ 5.35; 25 U.S.C. § 1323(a).  The President delegated the authority to accept retrocessions to the Secretary of the Interior, in consultation with the Attorney General.  ECF No. 1 at 13, ¶ 5.36; *see* Exec. Order No. 11435 (Nov. 21, 1968), 33 Fed. Reg. 17339-01 (Nov. 23, 1968).

In 2012, the Washington State Legislature adopted a law codifying the process by which the State could retrocede its Public Law 280 jurisdiction to the United States.  *See* RCW 37.12.160.  The Yakama Nation filed a petition with the Office of the Governor on July 17, 2012, asking the State to retrocede its civil and

criminal jurisdiction over "all Yakama Nation Indian Country" and in five areas

listed in RCW 37.12.010. ECF Nos. 1 at 13, ¶ 5.38; 16-1 at 21, 25.

On January 17, 2014, Governor Jay Inslee issued a proclamation partially

retroceding civil and criminal jurisdiction previously acquired under Public Law

280 over Indians within the Yakama Reservation. ECF Nos. 1 at 14, ¶ 5.40; 16-1

at 25-27. Particularly relevant here, paragraph 3 of the Governor's retrocession

proclamation specified that the State would "retrocede, in part, criminal

jurisdiction over certain criminal offenses," and "retain[] jurisdiction over criminal

offenses involving *non-Indian defendants and non-Indian victims*." ECF No. 6-1

at 26 (emphasis added). In a letter transmitting the proclamation to the Department

of the Interior ("DOI") on January 27, 2014, Governor Inslee explained that the

State's retrocession of criminal jurisdiction was intended to retain jurisdiction

whenever "non-Indian defendants *and/or* non-Indian victims" were involved. ECF

Nos. 1 at 14, ¶ 5.41; 16-1 at 30.

On October 19, 2015, DOI notified the Yakama Nation of the United States'

acceptance of "partial civil and criminal jurisdiction over the Yakama Nation."

ECF Nos. 1 at 14, ¶ 5.42; 16-1 at 32. Regarding the "extent of retrocession," DOI

stated that Governor Inslee's proclamation was "plain on its face and

unambiguous." ECF Nos. 1 at 16, ¶ 5.47; 16-1 at 36. Noting its concern that

"unnecessary interpretation might simply cause confusion," DOI explained that

"[i]f a disagreement develops as to the scope of the retrocession, we are confident that courts will provide a definitive interpretation of this plain language of the Proclamation."  ECF Nos. 1 at 16, ¶ 5.48; 16-1 at 36.  Pursuant to the DOI's instructions, the United States formally implemented retrocession on April 19, 2016, following significant coordination between the Yakama Nation, the United States, the State of Washington, and local jurisdictions.  ECF No. 1 at 18, ¶ 5.53.

On March 8, 2018, Division Three of the Washington State Court of Appeals issued its decision in *State v. Zack*, 2 Wash. App. 667 (2018).  The *Zack* court held that, while the State of Washington had partially retroceded jurisdiction to the Yakama Nation, the State retained criminal jurisdiction over crimes occurring on deeded land within the Yakama Reservation that involve a non-Indian, whether as a victim or defendant.  ECF No. 1 at 19, ¶ 5.57; 2 Wash. App. at 676.  On July 27, 2018, the Office of Legal Counsel for the United States Department of Justice ("OLC") issued a memorandum opinion addressing the scope of Washington's retrocession of criminal jurisdiction on the Yakama Reservation, in which OLC concluded that "Washington has retained jurisdiction over criminal offenses where any party is a non-Indian, as the Washington Court of Appeals recently held in *State v. Zack*."  ECF Nos. 1 at 19, ¶ 5.58; 16-1 at 51-52.

Plaintiff asserts that, following the United States' acceptance of partial retrocession of jurisdiction within the Yakama Reservation, only the United States,

not the State of Washington, "has criminal jurisdiction over non-Indian versus Indian crimes exclusive of Defendants." ECF No. 1 at 20, ¶ 6.3. In other words, Plaintiff maintains that the State retroceded full criminal jurisdiction over all criminal offenses involving Indians as a defendant and/or victim. *See* ECF No. 16 at 2. Plaintiff alleges that, despite retrocession, Defendants have exercised *ultra vires* criminal jurisdiction over Yakama members within the Yakama Reservation, as evidenced by the September 26, 2018, arrest of Ms. Gunn and subsequent search of Ms. Hernandez' property. ECF No. 1 at 20-21, ¶ 6.4.

In the pending motion, Plaintiff requests a preliminary injunction "enjoining Defendants, and all persons acting on Defendants' behalf, from exercising criminal jurisdiction arising from actions within the exterior boundaries of the Yakama Reservation involving an Indian as a defendant and/or victim." ECF No. 16 at 2.

## DISCUSSION

### I. Standing

The Court first considers Defendants' argument that Plaintiff lacks Article III standing to challenge the alleged infringement of sovereignty at issue in this case. ECF No. 20 at 7-13. In order for a federal court to have subject-matter jurisdiction over a claim, the plaintiff must have standing under Article III of the Constitution to challenge an alleged wrong in federal court. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The Supreme Court has created a three-part test to

determine whether a party has standing to sue: (1) the plaintiff must have suffered an "injury in fact," meaning that the injury is a legally protected interest which is (a) concrete and particularized and (b) actual or imminent; (2) there must be a casual connection between the injury and the conduct brought before the court; and (3) it must be likely, rather than speculative, that a favorable decision by the court will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). At the pleading-stage, "the party invoking federal jurisdiction bears the burden of establishing these elements." *Id*. at 561. Though the Court treats pleading-stage factual allegations as true, plaintiff must allege facts that give rise to a plausible inference that plaintiff is entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570-72 (2007).

Here, Defendants' primarily dispute whether Plaintiff has established the existence of a concrete, particularized injury in this case. Defendants argue that Plaintiff fails to identify a "likelihood of substantial and immediate irreparable injury," and therefore lack standing to bring this claim. Plaintiff responds that it has suffered an injury-in-fact because Defendants' exercise of criminal jurisdiction within the Yakama Reservation infringes upon Tribal sovereignty. ECF No. 22 at 8-9. The Court agrees that Plaintiff's allegations are sufficient to confer standing.

Plaintiff alleges that Defendants' assertion of criminal jurisdiction over crimes within the Yakama Nation involving Indians, following the United States'

acceptance of Washington's retrocession, constitutes a violation of the Yakama Nation's sovereignty. *Id*. at 9. Thus, "[t]he injury that the Yakama Nation has sustained, and will continue to sustain without injunction, is a violation of its sovereign legally protected rights." *Id*. Defendants do not dispute that they asserted criminal jurisdiction over Yakama members on the Yakama Reservation following retrocession, nor do they deny that they will continue to exercise such jurisdiction in the future. To the contrary, Defendants maintain that they should not be prevented, by Plaintiff or this Court, from "enforcing state criminal laws within their own jurisdictions in contravention of state law." ECF No. 20 at 13.

The Court finds that actual infringements on a tribe's sovereignty, as alleged by Plaintiff in this case, establishes "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. A tribe has a legal interest in protecting tribal self-government from a state's allegedly unjustified assertion of criminal jurisdiction over Indians and Indian Country. Congress, too, has a substantive interest in protecting tribal self-government. *See Moe v. Confederate Salish and Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 469 n.7 (1976). Accordingly, the Defendants' alleged exercise of criminal jurisdiction over Yakama members on the Yakama Reservation constitutes an affront to sovereignty sufficient to confer standing. Plaintiff has alleged facts from which the Court

could reasonably infer concrete, particularized, and actual or imminent injury. *See Lujan*, 504 U.S. at 560.

The Court finds that Plaintiff also satisfies Article III's remaining requirements—plaintiff's injury-in-fact is "fairly traceable" to the "complained-of-conduct of the defendant," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998), and a favorable ruling would likely redress plaintiff's injury. *Lujan*, 504 U.S. at 561. As noted, Defendants confirm that they exercised criminal jurisdiction over Yakama members within the Yakama Reservation on September 26, 2018, and do not deny their intent to continue exercising criminal jurisdiction within the Yakama Reservation. And, an injunction preventing Defendants from exercising criminal jurisdiction would unquestionably prevent further alleged violations of the Yakama Nation's sovereignty. Accordingly, the Court finds that Plaintiff has satisfied Article III's standing requirements.

In finding that Plaintiff's alleged injury satisfies Article III's case-or-controversy requirement, the Court notes that standing in no way depends on the merits of Plaintiff's contention that Defendants' conduct is illegal. *See*, *e.g.*, *Flast v. Cohen*, 392 U.S. 83, 999 (1968). The validity of Plaintiff's claim is not to be conflated with Article III's injury-in-fact requirement. The Court considers the merits of Plaintiff's claim below.

//

## II.  Injunction

Pursuant to Federal Rule of Civil Procedure 65, the Court may grant preliminary injunctive relief in order to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b)(1)(A).  Rule 65 also states that "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing."  Fed. R. Civ. P. 65(a)(2).

At oral argument, the Court questioned the parties as to whether there was any reason not to make this action a final injunction.  Defendants confirmed that the Court had everything necessary to make a final decision on the case, clarifying that they did not intend to supplement the record further.  Plaintiff agreed with Defendants.  The Court finds that there is no reason not to decide the issue as a final injunction as it appears that the parties do not have any additional evidence concerning the decision with respect to Plaintiff's claims.  Accordingly, the Court considers Plaintiffs' request for a preliminary injunction as a final injunction.

To obtain a permanent or final injunction, a plaintiff must demonstrate: "(1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction." *Indep. Training & Apprenticeship Program v. California*

*Dep't of Indus. Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013). Plaintiff must satisfy each element for injunctive relief. "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Id.* (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)). Accordingly, the Court's analysis remains largely the same as if it were considering the Plaintiff's original motion for preliminary injunction.

**A. Actual Success on the Merits**

This case concerns the scope of the State of Washington's retrocession of criminal jurisdiction within the Yakama Reservation. Plaintiff contends that the State retroceded criminal jurisdiction "over all crimes within the Yakama Reservation where an Indian is involved *as a defendant and/or victim*." ECF No. 16 at 15 (emphasis added). Accordingly, Plaintiff insists that Defendants are violating the Yakama Nation's treaty rights and threatening its sovereignty by exercising criminal jurisdiction over enrolled Yakama members within the Yakama Reservation. *Id.* at 2. Defendants maintain that, while the State retroceded some criminal jurisdiction to the United States, the State retained jurisdiction over criminal offenses involving non-Indian defendants *and/or* non-Indian victims within the Yakama Reservation. ECF No. 20 at 6-7.

Plaintiff provides four reasons why the United States reassumed "the full scope of Public Law 280 criminal jurisdiction" from the State of Washington: (1) in accepting retrocession, DOI interpreted the Governor's proclamation as retroceding all criminal jurisdiction over offenses whenever a Yakama member is involved as either a defendant and/or victim; (2) DOI's acceptance of retrocession should be afforded judicial deference; (3) the United States Office of Legal Counsel's recent memorandum opinion should be afforded no deference; and (4) Washington's attempt to claw back jurisdiction it clearly retroceded is not supported by applicable law. ECF No. 16 at 11-32.

In the Court's view, Plaintiff's arguments hinge entirely on the underlying assumption that DOI, in accepting retrocession, definitively identified the scope of the State's retrocession as (1) retroceding federal jurisdiction over all offenses occurring within the Yakama Reservation whenever an Indian is involved as a defendant and/or victim and (2) retaining criminal jurisdiction only over criminal offenses involving both a non-Indian defendant and non-Indian victim, as well as non-Indian victimless crimes. ECF No. 16 at 17-18 ("Assistant Secretary Washburn's stated intent in accepting retrocession supports the State no longer retaining concurrent criminal jurisdiction whenever an Indian is involved as a defendant and/or victim."). Assuming this is DOI's interpretation, Plaintiff urges a "federal-focus perspective on interpreting retrocessions," arguing that "the

Department of the Interior's actions are controlling, regardless of any other governments' and agencies' contrary interpretation." *Id*. at 12. And, according to Plaintiff, applying the federal-focus perspective to DOI's actions in this case unambiguously support Plaintiff's interpretation of the scope of retrocession—i.e., retroceding criminal jurisdiction over all offenses where a Yakama member is involved. *Id*.

Unlike the Plaintiff, the Court is not convinced that DOI, in accepting retrocession, necessarily understood the Governor's retrocession proclamation as an offer to retrocede criminal jurisdiction over all crimes within the Yakama Reservation whenever an Indian is involved "as a defendant and/or victim." *Id*. at 16-18. The retrocession proclamation, paragraph 3 provides in relevant part:

> Within the exterior boundaries of the Yakama Reservation, the State shall retrocede, in part, criminal jurisdiction over certain criminal offenses not addressed by Paragraphs 1 and 2. The State retains jurisdiction over criminal offenses involving *non-Indian defendants and non-Indian victims*.

ECF No. 16-1 at 25 (emphasis added). Thus, the State expressly retained jurisdiction over "all criminal offenses involving *non-Indian defendants and non-Indian victims*." ECF No. 6-1 at 26 (emphasis added). As noted, in the letter transmitting the proclamation to DOI on January 27, 2014, Governor Inslee clarified that the State's intent in retroceding criminal jurisdiction was to retain

jurisdiction whenever "non-Indian defendants *and/or* non-Indian victims" were involved.  ECF Nos. 1 at 14, ¶ 5.41; 16-1 at 30.

In DOI's October 19, 2016, letter notifying the Yakama Nation of retrocession, DOI confirmed that it had accepted the Governor's offer of retrocession and briefly addressed the "extent of retrocession" issue.  ECF No. 16-1 at 36.  After confirming that "Washington law clearly sets forth the process for retrocession of civil or criminal jurisdiction in Washington State," DOI summarily concluded that the Governor's proclamation was "plain on its face and unambiguous."  ECF No. 16-1 at 36.  However, DOI then continued:

> We worry that unnecessary interpretation might simply cause confusion.  If a disagreement develops as to the scope of the retrocession, we are confident that courts will provide a definitive interpretation of the plain language of the Proclamation.  In sum, it is the content of the Proclamation that we hereby accept in approving retrocession.

*Id*.

Plaintiff maintains that DOI's interpretation of the proclamation as "plain on its face and unambiguous," and its characterization of any subsequent interpretation as "unnecessary," amounts to an express rejection of Governor Inslee's subsequent clarification that the proclamation's intent was to retain state criminal jurisdiction over cases involving "non-Indian defendants *and/or* non-Indian victims."  *Id*. at 16.  The Court, however, disagrees.  Rather than weighing

1    in on the issue, DOI expressly declined to delineate the scope of retrocession,

2    instead leaving it for the courts to "provide a definitive interpretation of the plain

3    language of the Proclamation."  ECF No. 16-1 at 36.

4        Informative and not necessarily binding on this Court, a Washington court

5    has now provided a definitive interpretation of the plain language of the

6    Governor's retrocession proclamation and, in doing so, has clarified the scope of

7    Washington's criminal jurisdiction within exterior boundaries of the Yakama

8    Reservation following retrocession.  *See State v. Zack*, 2 Wash. App. 2d 667

9    (2018), *review denied*, 191 Wash. 2d 1011 (2018).  In *State v. Zack*, Division

10   Three of the Washington Court of Appeals considered a jurisdictional challenge to

11   the scope of the State's post-retrocession criminal jurisdiction within the Yakama

12   Reservation, almost identical to Plaintiff's challenge here.  The *Zack* court

13   determined that "[t]he jurisdiction issue turns on the meaning of the Governor's

14   proclamation, with the dispositive question being the meaning of the word 'and.'"

15   *Id*. at 672.  The *Zack* court is the only court, state or federal, to consider whether

16   the Governor's use of the word "and" in the contested retrocession provision

17   should be read in the conjunctive or disjunctive.

18       Performing a plain language analysis, the *Zack* court concluded that the

19   word "and" should be read in the disjunctive—i.e., "non-Indian defendant *and/or*

20   non-Indian victim"—because the conjunctive interpretation "would render the

proclamation internally inconsistent and nonsensical." *Id.* As the court explained,

appellant's proposed construction, and the one advanced by Plaintiff in this case,

"would mean that the only type of case the State could prosecute would require the

involvement of non-Indian defendants who victimized other non-Indians on fee

land." *Id.* at 675. However, because "[t]he State already had authority to

prosecute non-Indians for offenses committed on deeded lands prior to the

enactment of Public Law 280," and the Governor was only authorized to retrocede

jurisdiction acquired under Public Law 280, the *Zack* court concluded that the

conjunctive construction "would result in the Governor engaging in *ultra vires*

action." *Id.* at 675-76 ("Asserting or removing state jurisdiction over non-Indians

is not within the scope of Public Law 280 or RCW 37.12.010.). The *Zack* court

further observed that excluding Indians from prosecution in all cases "would mean

that the Governor intended to return all of the criminal jurisdiction the State

assumed by RCW 37.12.010 and the word 'in part' would be rendered meaningless

because there would have been total rather than partial retrocession." *Id.* at 675.

For these reasons, the court held that "the State retained jurisdiction to prosecute

this assault against a non-Indian occurring on deeded land within the boundaries of

the Yakama reservation." *Id.* at 676.

Though the Court is not bound by the decision, the Court finds the *Zack*

court's analysis and holding persuasive, particularly when considering the

historical patchwork of federal, state, and tribal criminal jurisdiction on the

Yakama Reservation.  Before the enactment of Public Law 280 or RCW

37.12.010, "the Yakima Nation was subject to the general jurisdictional principles

that apply in Indian country in the absence of federal legislation to the contrary."

*Confed. Bands*, 439 U.S. at 470.  Under those principles, while Indian tribes

generally retain criminal jurisdiction over Indians within Indian reservations, tribes

have no "inherent jurisdiction to try and to punish non-Indians."  *Id.*; *Oliphant v.*

*Suquamish Indian Tribe*, 435 U.S. 191, 212 (1978).  Thus, only the state possessed

criminal jurisdiction over non-Indians who committed crimes against other non-

Indians on Indian reservations.  *See*, *e.g.*, *Draper v. United States*, 164 U.S. 240,

242-43 (1896); *United States v. McBratney*, 104 U.S. 621, 624 (1882).  Victimless

crimes committed by non-Indians in Indian country are also within the exclusive

jurisdiction of the state.  *See Solem v. Bartlett*, 465 U.S. 463, 465 n.2 (1984),

Neither the federal government nor the Tribe have jurisdiction for these crimes.

 Public Law 280 authorized the State of Washington to assume full or partial

jurisdiction over criminal offenses and civil causes of action involving Indians in

Indian Country within the State's borders.  *Confed. Bands*, 439 U.S. at 471-72.  In

1963, the State opted to assume some jurisdiction under Public Law 280.  *See*

RCW 37.12.010.  As the Supreme Court explained, "[f]ull criminal and civil

jurisdiction to the extent permitted by Pub. L. 280 was extended to all fee lands in

every Indian reservation and to trust and allotted lands therein when non-Indians were involved." *Confed. Bands*, 439 U.S. at 475. However, "state jurisdiction was not extended to Indians on allotted and trust lands unless the affected tribe so requested," except for those eight areas of law specified in RCW 37.12.010(1)-(8). *Id*.

When Congress amended Public Law 280 in 1968, it authorized the United States to "accept a retrocession by any State of all or any measure of the criminal or civil jurisdiction" previously acquired pursuant to Public Law 280. 25 U.S.C. § 1323(a). By Executive Order, the Secretary of the Interior was then empowered to accept "*all or any measure*" of a state's offer of retrocession. *See* Exec. Order No. 11435 (Nov. 21, 1968), 33 Fed. Reg. 17339-01 (Nov. 23, 1968) (emphasis added). However, neither § 1323 nor the Executive Order authorize the Secretary to accept *more* jurisdiction than a state initially acquired under Public Law 280. Under federal law, a state may only retrocede any measure of jurisdiction "acquired by such State pursuant to [Public Law 280]." 25 U.S.C. § 1323(a).

The State of Washington's statute outlining the retrocession process, RCW 37.12.160(1), confirms that the State may only "retrocede to the United States all or part of the civil and/or criminal jurisdiction previously acquired by the state over a federally recognized Indian tribe, and the Indian country of such tribe." Particularly relevant here, the statute specifically defines "criminal retrocession" as

"the state's act of returning to the federal government the criminal jurisdiction acquired over Indians and Indian country under federal Public Law 280." RCW 37.12.160(9)(b).

Plaintiff urges the Court to interpret the Governor's retrocession proclamation, and DOI's acceptance of retrocession, as retroceding all criminal jurisdiction over crimes committed within the Yakama Reservation, including land held in fee by Indian and non-Indian owners, whenever an Indian is involved as a defendant and/or victim. ECF No. 16 at 18. Stated differently, Plaintiff maintains that "[t]he only criminal offenses over which the State retained jurisdiction are those involving both a non-Indian defendant and non-Indian victim, as well as non-Indian victimless crimes." *Id*. at 17-18. Plaintiff claims that DOI's acceptance of retrocession "does not leave open the possibility of the State continuing to play a role in Indian-involved crimes within the Yakama Reservation." ECF No. 16 at 16.

However, interpreting the Governor's retrocession proclamation as Plaintiff insists "would result in the Governor engaging in an *ultra vires* action," as the offer of retrocession would be *returning* more jurisdiction to the United States than the State assumed under Public Law 280 and RCW 37.12.010. *Zack*, 2 Wash. App. 2d at 676. As noted, the State's authority to prosecute non-Indians for crimes committed against non-Indians on the Yakama Reservation preexists Public Law

280 or RCW 37.12.010. Under Plaintiff's interpretation, the State would be "retaining" jurisdiction that it simply did not acquire from the United States pursuant to Public Law 280. The Court accepts the *Zack* court's logical interpretation, which is consistent with Public Law 280 and RCW 37.12.160's instructions.

Reading the Governor's use of the sentence "The State retains jurisdiction over criminal offenses involving non-Indian defendants and non-Indian victims." in context, both historical and in the context of the entire retrocession proclamation, also makes it plain that the State was retaining jurisdiction in two areas—over criminal offenses involving non-Indian defendants and over criminal offenses involving non-Indian victims. The plain reading of the language thus, also shows the limitation of the States' retrocession.

Moreover, Plaintiff's interpretation directly contradicts Governor Inslee's stated intent to "retrocede, *in part*, criminal jurisdiction." ECF No. 16-1 at 26 (emphasis added). Under Plaintiff's view of the scope of retrocession, the State retroceded all criminal jurisdiction assumed under Public Law 280, retaining only that jurisdiction that predated Public Law 280—i.e., the "authority to punish offenses committed by her own citizens upon Indian reservations." *Draper v. United States*, 164 U.S. 250, 247 (1896). This interpretation is at odds with Governor Inslee's stated intent of retroceding some, but not all, criminal

jurisdiction acquired under Public Law 280. The Court cannot reconcile Plaintiff's illogical interpretation of the scope of retrocession with the plain language of the Governor's retrocession proclamation, or federal and state law.

The Court concludes that the State retained jurisdiction over criminal offenses where any party is a non-Indian. This interpretation is consistent with the plain language of the Governor's retrocession proclamation, DOI's acceptance, and federal and state law governing the retrocession process. Accordingly, the Court finds that Plaintiff fails to establish success on the merits of its claims because Defendants have criminal jurisdiction over offenses committed by or against non-Indians within the Yakama Reservation.

**B. Irreparable Injury, Hardships, & Public Interests**

The Tribes' sovereignty has not been wrongfully diminished by the partial retrocession of jurisdiction preformed in accordance with the governing federal and state law. Accordingly, the Court finds that Plaintiff has not established irreparable harm and there are no hardships or public interests to be considered.

//

//

//

//

//

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Preliminary Injunction (ECF No. 16), converted to a request for a Permanent Injunction, is **DENIED**.

2. All remaining deadlines, hearings and trial are **VACATED**.

The District Court Executive is directed to enter this Order and Judgment for Defendants accordingly, furnish copies to the parties, and **CLOSE** the file.

**DATED** February 22, 2019.



THOMAS O. RICE
Chief United States District Judge